U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 JAN -2 AM 9:49

CLERK
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:23-cr-00119 – 1 |
| ) | |
| BAYOHAN MANGUAL ) | |

# OPINION AND ORDER DENYING
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
(Doc. 38)

Pending before the court is Defendant Bayohan Mangual's motion to suppress physical evidence obtained as a result of a November 17, 2023 search of his home. (Doc. 38.) Defendant argues the seizure violated the Fourth Amendment because the officers' search of a pink shed in Defendant's backyard exceeded the scope of the warrant. The government opposed the motion on August 28, 2024. (Doc. 45.) Defendant did not file a reply. The court heard oral arguments on December 10, 2024, at which point it took the pending motion under advisement.

On March 6, 2024, a federal grand jury returned a superseding indictment charging Defendant with Count I: conspiring to distribute fentanyl, cocaine, and cocaine base between August and September 2023, in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(C); Count II: carrying and using a firearm that was discharged during and in relation to the drug trafficking conspiracy, and knowingly possessing a firearm that was discharged in furtherance of the drug trafficking conspiracy on September 2, 2023, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and Count III: being a felon in possession of ammunition on or about September 2, 2023, in violation of 18 U.S.C. § 922(g)(1). (Doc. 24.)

The government is represented by Assistant United States Attorneys Jonathan Ophardt and Nicole P. Cate. Defendant is represented by Federal Public Defender

Michael L. Desautels and Assistant Federal Public Defenders Sara M. Puls, Steven L. Barth, and Carmen Brooks.

## I.   Findings of Fact.

On September 2, 2023, Rutland City Police Department ("RPD") officers responded to a call at 50 Cherry Street, Apartment 2, in Rutland, Vermont. Upon their arrival, they found a male outside the residence who was alive but suffering from gunshot wounds. Once inside, RPD officers found a deceased male who had been shot.

In the apartment, RPD officers recovered spent 9-millimeter shell casings and a firearm located near the deceased man's body. Forensic evidence revealed that the firearm had not been discharged. Security footage obtained from nearby cameras showed an individual running away carrying a bag. A Source of Information ("SOI") identified the individual as "Drake," known to RPD Detective Corporal Adam Lucia ("Detective Lucia") as a drug dealer in the Rutland area. Detective Lucia "slowed down the footage and observed that the item [the individual placed inside of the bag] appeared to be a black handgun." (38-1 at 6, ¶ 15.)

The SOI's identification was corroborated by additional witnesses. While investigating the shooting, Detective Lucia received a phone call from Massachusetts State Trooper Timothy Alben, who informed Detective Lucia that he had just located narcotics in a vehicle occupied by Dustin Thompson, a known associate of "Drake." Mr. Thompson told Trooper Alben he had just met with "Drake" at the MGM Casino in Springfield, Massachusetts.

Officers recovered surveillance footage of the MGM Casino parking garage, which showed Mr. Thompson approaching a vehicle that "Drake" was in. The vehicle was registered to Laquanna Watkins, Defendant's girlfriend. On September 2, 2023, according to license plate readers, that same vehicle was traveling north on I-91. "This travel would be consistent with the vehicle traveling north from Connecticut to retrieve [Defendant] from Vermont after the shooting." *Id.* at 12, ¶ 24.

On November 10, 2023, based on this and other evidence, Homeland Security Investigations (HSI) sought and obtained a search warrant for Defendant's residence. It

2

authorized officers to seize any evidence related to violations of being a felon in possession of firearms and ammunition, and possessing and discharging a firearm in furtherance of a drug trafficking crime or conspiracy. The search warrant described the premises to be searched as follows:

> The premises to be searched are described as follows and include the residence and attached garage and all locked and closed containers and vehicles found therein: the residential property located at 121 Barnes Street, New Britain, Connecticut. The residential property is a two-story, cape style single-family residence, with an attached two car garage, and cream-colored exterior. The residence is located on the southwest portion of Barnes Street, and accessed by two exterior doors on the front of the residence. The below photograph is a fair and accurate depiction of the residence.

(Doc. 38 at 3-4; Doc. 45 at 3.) The search warrant included a photograph of the front of the residence, which depicted a detached garage, but did not show any part of the backyard except the tops of trees behind the house.

On November 17, 2023, Rutland HSI officers, Hartford, Connecticut HSI officers, and Connecticut State Police officers executed the search warrant. The officers searched Defendant's home and recovered an iPhone, a Glock 43 9-millimeter firearm box, approximately $9,800 in U.S. currency, and a white hoodie-style shirt.

The officers also searched a pink shed located in the backyard of the property. The backyard was surrounded by a tall white fence and contained a swing set, a trampoline, and an aboveground pool. When the officers entered the pink shed, the door was closed but not locked. The parties have stipulated that the pink shed was within the curtilage of Defendant's residence. From the pink shed, the officers recovered incriminating evidence. Neither party proffered evidence of the distance between the pink shed and the residence.

## II.    Conclusions of Law and Analysis.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or

3

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

"At the 'very core' of the Fourth Amendment 'stands the right of a man to retreat into his home and there be free from unreasonable governmental intrusion.'" *United States v. Alexander*, 888 F.3d 628, 631 (2d Cir. 2018) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). "[T]he area immediately surrounding and associated with the home[,]" known as the curtilage, is considered "part of the home itself for Fourth Amendment purposes." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (internal quotation marks omitted) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). "The scope of a search pursuant to a valid warrant is defined by the warrant's description of the premises and the objects of the search, and by the places in which the officers have probable cause to believe those objects may be found." *United States v. Kyles*, 40 F.3d 519, 523 (2d Cir. 1994) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)).

Because Defendant and the government agree that the pink shed is within the curtilage of Defendant's home, the only question is whether a search warrant's authorization of a search of Defendant's residence included the pink shed. The five Circuits that have addressed this issue have held that if an outbuilding is included within the home's curtilage, a search warrant authorizing a search of a defendant's residence permits the search of items and buildings within the curtilage as well.[1]

---

[1] *See United States v. Montieth*, 662 F.3d 660, 670 n.2 (4th Cir. 2011) (finding that "[t]he district court did not err . . . in concluding that the shed was within the curtilage of the home, and that the warrant for the residence was therefore 'sufficient to include within its scope the shed that is within the privacy fence and close to the residence itself[]'") (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984)); *United States v. Paull*, 551 F.3d 516, 523 (6th Cir. 2009) (holding officers' search of defendant's garage was authorized by search warrant specifying defendant's residence because "a warrant for the search of a specified residence or premises authorizes the search of auxiliary and outbuildings within the curtilage[]") (internal quotation marks omitted); *United States v. Cannon*, 264 F.3d 875, 880-81 (9th Cir. 2001) ("This court, other circuits, and state courts have held that the Fourth Amendment is not violated by a search of the grounds or outbuildings within a residence's curtilage where a warrant authorizes a search of the residence . . . even if not specifically referenced in the search warrant."); *United States v. Griffin*, 827 F.2d 1108, 1115 (7th Cir. 1987) (finding that "[a]lthough the better practice would be to specify clearly in the warrant whether the entire premises or only some building on or portions of the premises are subject to search," the officers' search of defendant's yard, toolshed, and

4

District courts that have addressed this issue have reached similar conclusions.[2] The District of Connecticut's decision in *United States v. Willis* is particularly instructive. In *Willis*, the defendant argued the officers exceeded the scope of the warrant by searching a storage compartment "located immediately outside the back of the home." 634 F. Supp. 3d 14, 16 (D. Conn. 2022). The search warrant described the property to be searched as "the right-side of the duplex house at 44 Allview Avenue" and included a photograph of the residence which did not include the storage shed. *Id.* In executing the search warrant, the officers identified "a locked, closet-like storage compartment immediately adjacent to the basement[,]" which they searched. *Id* at 17.

In considering whether the search warrant authorized the search of the storage compartment, the district court noted that "at least six federal appeals courts have uniformly concluded that a search warrant need not explicitly authorize law enforcement authorities to search outbuildings and structures within the curtilage." *Id.* at 20. It held

---

automobile was permissible pursuant to a warrant describing defendant's residence because "the search was within the reasonable scope of the warrant[]"); *United States v. Earls*, 42 F.3d 1321, 1327 (10th Cir. 1994) (finding that officers' search of defendant's garage, detached office, and shed was authorized by a "warrant stat[ing] the physical address of the premises and . . . a description of the residence[]" because such a warrant contemplates "the search of the outbuildings within the curtilage of the residence[]"). In an unpublished opinion, the Fifth Circuit recently arrived at the same conclusion. *United States v. Babin*, 817 F. App'x 23, 25 (5th Cir. 2020) ("Because, as the district court concluded, the warrant authorized a search on the premises of the residence at the designated address, which was correctly stated in the warrant, it also authorized the search of a detached shed on that premises."). The Second Circuit does not appear to have addressed the issue.

[2] *See, e.g., United States v. Oliver*, 2024 WL 629969, at *5 (E.D.N.C. Jan. 29, 2024) (finding that "the storage shed is part of the curtilage of [defendant's residence]" meaning it is "included in the search warrant for the residence[]" where the warrant included a description of the premises and "a picture of the residence in question where the shed is clearly visible[]"); *United States v. Kellogg*, 2013 WL 3991956, at *17 (N.D. Ga. Aug. 1, 2013) (determining a shed which was "within the property and 'not far' from the back of the house" and "inside the fence that encircled the property . . . was within the curtilage of the residence. Thus, the search of the shed was authorized" by a warrant describing the appearance and address of the residence to be searched); *United States v. Hibbs*, 905 F. Supp. 2d 862, 866 (C.D. Ill. 2012) ("The search warrant in this case authorized intrusion into the area of highest expectation of privacy[, defendant's residence]. It seems logical and reasonable that a search warrant that authorizes intrusion on this greater area of privacy would include authorization for intrusion in the lesser area of privacy, the backyard.").

that "if the place to be searched is identified by street number, the search is not limited to the dwelling house, but may also extend to the garage and other structures deemed to be within the curtilage and the yard within the curtilage." *Id.* (internal quotation marks omitted) (quoting Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.10(a) (6th ed. 2022)). For that reason "[i]f a search warrant authorizes a search of the home, it necessarily authorizes a search of the curtilage as an inherent part of the home." *Id.*

Although the majority approach is to hold that a search warrant for a residence includes objects within its curtilage, there is at least one court that has disagreed. In *United States v. Longie*, the District of North Dakota considered whether a search warrant authorizing a search at the "Myra/Ashley Hunt residence, unit 436, 4175 72nd Avenue North East, Fort Totten, N.D. Three bedrooms, wooden frame structure over a cement basement, peach in color[,]" authorized the search of a "shed[] approximately [sixty] yards to the west of the residence[.]" 370 F. Supp. 2d 941, 943 (D.N.D. 2005).

Finding that the warrant "authorized a search of the residence, not the premises or property[,]" *id.* at 944, the court held "the officers exceeded the scope of the warrant when they searched the shed some [sixty] yards away from the residence." *Id.* The court further held, however, that "the shed was not within the curtilage of the house," "the shed was not surrounded by a fence," and "the shed was not intimately tied to the house and [d]efendant had no reasonable expectation of privacy in the shed."[3] *Id.* at 945. The court found "the warrantless search of the shed is a close issue under the open fields doctrine[,]" but because "the agents could have easily secured the shed and applied for a

---

[3] Generally, to have standing to assert a violation of the Fourth Amendment, a defendant must have a reasonable expectation of privacy in the item to be searched. *See United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) ("A defendant lacks 'standing' in the Fourth Amendment context when his [or her] contacts with the searched premises are so attenuated that no expectation of privacy he [or she] has in those premises could ever be considered reasonable.") (citing *Rakas v. Illinois*, 439 U.S. 128, 137-38 (1978)). Arguably, once the *Longie* court found no expectation of privacy, the motion to suppress should have been denied.

second warrant prior to their warrantless entry of the shed," suppression of the evidence was warranted. *Id.* 945-46. These facts render the present case easily distinguishable.

Here, the search warrant authorized a search of "the residential property located at 121 Barnes Street, New Britain, Connecticut[,]" including the residence and attached garage. (Doc. 38 at 3.) The warrant included a description and photograph of the house. The parties have stipulated that the pink shed was within the curtilage. The shed was surrounded by a fence and in close proximity to other items associated with the "activities and privacies of life requiring Fourth Amendment protection." *Longie*, 370 F. Supp. 2d at 945. The open fields doctrine does not apply and is not at issue. According to the majority approach, the search warrant for the residence included the curtilage.[4]

As the judge in *Longie* recognized, the result it reached was an unusual one and motivated in part by the agents' disagreement about whether the shed could be searched. In contrast, in this case law enforcement agents relied in good faith on a facially valid search warrant and followed the overwhelming majority approach that a search warrant for a residence authorizes a search of its curtilage.[5]

Although Defendant urges the court to apply canons of construction and find that the search warrant narrows the scope of the authorized search to "[t]he premises . . . described as follows and includ[ing] the residence and attached garage and all locked and closed containers and vehicles found therein[,]" (Doc. 38-1 at 22), the canons of construction do not apply to search warrants. Instead "the ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citing *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999)).

---

[4] *See, e.g., Griffin*, 827 F.2d at 1110 ("(*on the premises known as* ) one red, one story framed house with white trim at the address 5311 East 13th Avenue, Gary, Indiana, with a detached garage, red with white trim[.]") (emphasis in original); *Earls*, 42 F.3d at 1326 ("The search warrant authorized a search of the 'PREMISES KNOWN AS 1601 N. Council, Oklahoma City, Oklahoma.' An attachment to the [search] warrant gave a physical description of the residence at the address.").

[5] Accordingly, even if the search warrant did not authorize a search of the pink shed, the exclusionary rule would not apply. *United States v. Leon*, 468 U.S. 897, 921-24 (1984).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving[.]" *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Accepting Defendant's argument would require law enforcement officers to analyze the language of a search warrant in a manner akin to statutory interpretation or contract construction performed by courts. Such an approach is not reasonable.

Because the parties concede that the pink shed was within the curtilage of Defendant's home, the search warrant authorized the officers' search of the pink shed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress evidence is DENIED. (Doc. 38.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 2nd day of January, 2025.

Christina Reiss, Chief Judge
United States District Court